UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 03-16** |
| **KENNETH VICKNAIR** | **SECTION:  I** |

## ORDER AND REASONS

Before the Court is the motion of defendant, Kenneth Vicknair, to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  The Court previously denied defendant's motion in part and set a hearing to determine the sole remaining issue of whether defendant received ineffective assistance of counsel with respect to his failure to testify at trial.  For the following reasons, defendant's motion is **DENIED**.

### *BACKGROUND*

On April 29, 2004, defendant was charged in a two-count superseding indictment with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) and conspiracy to commit fraud by wire communication in violation of 18 U.S.C. § 1343.[1]  During the course of the conspiracy, defendant became involved in a transaction with two co-defendants to sell Venezuelan promissory notes to undercover federal agents.  Prior to completing this transaction, the undercover federal agents represented to defendant that they were acting on behalf of drug dealers and were purchasing the notes to launder drug money.  Defendant was represented at trial

---

[1] Rec. Doc. No. 61.

by John E. DiGiulio, Esq., and co-counsel Dylan Utley, Esq. At trial, defendant did not testify and did not call any witnesses in support of his defense. On August 2, 2005, after a two-day trial, a jury returned a verdict of guilty as to both counts.[2] Defendant was sentenced on June 15, 2006, to a term of imprisonment of 60 months as to each count, to be served concurrently.[3] On February 2, 2007, defendant filed this motion.

In his motion, defendant argued that he was denied his right to effective assistance of counsel at trial as guaranteed by the Sixth Amendment to the United States Constitution. Specifically, defendant argued that: (1) his attorney was mentally incompetent at trial because of a recent surgery and because he was under the influence of prescription pain medication; (2) his attorney prevented him from testifying at trial; (3) his attorney failed to call both expert and lay witnesses; (4) his attorney failed to make objections during the trial, and (5) his attorney's opening argument, cross-examinations, and closing arguments were ineffective. On April 26, 2007, this Court denied defendant's motion in part, reserving judgment as to whether defendant's counsel impermissibly prevented him from testifying at trial and setting an evidentiary hearing to investigate this issue.[4] The Court later denied defendant's motion for reconsideration.[5]

The Court's evidentiary hearing stretched over three sessions, during which both defendant and the United States were able to question witnesses and present oral argument to the

---

[2]Rec. Doc. No. 185.

[3]Rec. Doc. No. 260, p. 2.

[4]Rec. Doc. No. 316.

[5]Rec. Doc. No. 324.

Court.[6]  In addition, defendant and the United States submitted extensive supplemental memoranda to brief this remaining issue.[7]

## *LAW AND ANALYSIS*

### I. Standard of Law

The standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  In *Strickland*, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel that requires the petitioner to prove deficient performance and resulting prejudice.  *Strickland*, 466 U.S. at 697, 104 S. Ct. 2070-71.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688, 104 S. Ct. at 2064.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694, 104 S. Ct. at 2068; *see also United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).  In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Kimler*, 167 F.3d at 893.

The second prong of the *Strickland* test looks to the prejudice effected by counsel's deficient performance.  This requires "'a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"  *United States v. Mullins*, 315

---

[6]*See* Rec. Doc. Nos. 327, 331, 336.

[7]Rec. Doc. Nos. 339, 341.

F.3d 449, 456 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). "[T]he defendant must show that counsel's errors were prejudicial and deprived defendant of a 'fair trial, a trial whose result is reliable.'" *United States v. Baptiste*, No. 98-207, 2007 U.S. Dist. LEXIS 21388, at *11 n.6 (E.D. La. Mar. 26, 2007) (Engelhardt, J.) (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). "This burden generally is met by showing that the outcome of the proceeding would have been different but for counsel's errors." *Id.* (citations omitted).

## II. Discussion

Defendant presents two arguments with respect to his counsel's performance: he contends that his counsel (1) impermissibly prevented defendant from testifying, despite his wish to do so, and (2) failed to fully advise him of his right to testify. Defendant next argues that, but for his counsel's deficient performance in failing to fully advise him of his right to testify, there is a reasonable probability that the outcome of his trial would have been different. Defendant contends that if he had taken the stand in his own defense, he would have been able to refute the prosecution's accusations and sway the jury in his favor. After a careful review of the trial transcripts and the evidence produced in connection with this motion, however, and notwithstanding the fact that defendant chose to call no witnesses, the Court finds that defendant would not have been a credible witness and that, even assuming that his counsel's performance was objective unreasonable, these alleged errors would not have prejudice him at trial. *See United States v. Araujo*, 77 F. App'x 276, 279 (5th Cir. 2003) (finding the defendant's proffered testimony insufficient to demonstrate prejudice under the second prong of *Strickland* even where "this proposed testimony would have been the only evidence to support affirmatively the defense theory" regarding defendant's presence at the scene); *United States v. Davis*, No. 02-060, 2006

U.S. Dist. LEXIS 44518. at *11-12 (E.D. La. Jun. 29, 2006) (Duplantier, J.) (finding no prejudice under *Strickland* where defendant presented no defense witnesses and where "[r]elying on a defense which required the jury to find [the defendant's] testimony credible involved a significant risk, because good reason existed for the jury to not credit [the defendant's] testimony").

The defendant's lack of credibility was revealed during the Court's evidentiary hearings. For example, defendant admitted that, earlier during his career as a pilot, he had misrepresented the number of hours he had flown to secure employment.[8] Defendant's explanation of his involvement with a potential pay-per-view concert production leads the Court to believe that he may have misrepresented the investments he had secured in that business venture for the purpose of attracting additional investors.[9] The jury would also have been aware that defendant conducted the business transaction central to this case with men he knew to be felons.[10] Indeed, he wrote a letter to his wife just prior to his fateful meeting with undercover agents explaining that he did not trust his co-defendant, Harry Adair.[11] In addition, defendant contradicted himself before this Court: at sentencing, he testified that his counsel told him that he could not testify at trial;[12] at the hearing conducted pursuant to this motion, however, defendant stated the

---

[8] Tr. of hr'g, pp. 103-05 (Jul. 2, 2007).

[9] Tr. of hr'g, pp. 108-17 (Jul. 2, 2007). When asked at his initial appearance whether he was employed, defendant failed to advise the Magistrate Judge of his employment as a consultant on the pay-per-view project. Tr. of hr'g pp. 117-19 (Jul. 2, 2007); Financial Aff. produced Jan. 16, 2003.

[10] Tr. of hr'g, pp. 119, 146-47 (Jul. 2, 2007).

[11] Tr. of hr'g, p. 148 (Jul. 2, 2007).

[12] Rec. Doc. No. 308, p. 38.

opposite.[13] When pressed to reconcile his two conflicting statements, defendant could produce no satisfactory answer.[14]

This Court's conclusion that defendant's performance on the witness stand would have been damaging is buttressed by testimony regarding defendant's trial preparation. Defense counsel's testimony revealed that defendant would have faced damaging cross-examination on the witness stand. During trial preparation, defense counsel conducted a mock examination of defendant. Both defense counsel noted that defendant's performance during this practice session was troublesome. As DiGiulio explained, "[I]t was my opinion that--well, it didn't go well. I mean, it wasn't the kind of thing that I would want to have happen in a trial. . . . [I]t wasn't so much on the facts of this case as on some other areas that it got into where Mr. Vicknair got pretty uncomfortable and, in fact, at the end asked whether it was okay to take the Fifth while he was testifying."[15] In an e-mail, defendant recognized the difficulty his testimony might present at trial: "I know I have to curb my pride and arrogant tone in my testimony."[16]

The evidence adduced at trial also undermines the exculpatory value of defendant's potential testimony. At trial, Assistant United States Attorney Marvin Opotowsky testified that defendant had come to him to discuss counterfeit Venezuelan bonds; despite these concerns, however, defendant went forward with the transaction.[17] The testimony of Chien Lam, who was present at the meeting and arrested along with defendant, also contradicts defendant's version of

---

[13] Tr. of hr'g, p. 91 (Jun. 15, 2007).

[14] Tr. of hr'g, pp. 91-93 (Jun. 15, 2007).

[15] Tr. of hr'g, p. 37 (Jun. 15, 2007); *see also* Tr. of hr'g, p. 12 (Jun. 21, 2007).

[16] Def. Ex. 4, p. 16.

[17] Rec. Doc. No. 307, pp. 127-31.

the events.  Lam testified that the duffle bags defendant had in his car were brought to carry large amounts of cash,[18] not merely to store and protect the bulletproof vests that defendant supplied, as defendant contends.[19]

Lam's testimony also provides one of the most damning contradictions of defendant's proposed testimony.  During the transaction, the undercover officers identified themselves as the agents of powerful drug dealers and then briefly left the hotel room.  Lam testified that, after relaying his concern about the propriety of the situation to defendant, defendant told Lam that "he didn't care where the money came from."[20]  A central tenet of defendant's defense is that, when faced with the threats made by the putative agents of drug dealers, he only feigned continued interest in the transaction to safely extricate himself and his co-defendants from the situation.  As Lam reported, however, defendant made the statement that "he didn't care where the money came from" outside the presence of the undercover agents; this undermines defendant's assertion that the statement was only made to appease the undercover agents and suggests, instead, that he acquiesced in the conspiracy to launder drug money.  Lam's testimony would have cast significant doubt on defendant's version of the events.

In its observations of his conduct, the Court found defendant to be a combative, incredible, and generally difficult witness who would not have endeared himself to a jury.  His version of the facts is significantly contradicted by other evidence offered at trial, and he would have been vigorously and damagingly cross-examined had he testified.  Even assuming his

---

[18]Rec. Do. No. 307, p. 261.

[19]Tr. of hr'g, p. 172 (Jul. 2, 2007).

[20]Rec. Doc. No. 307, p. 41.

7

counsel's performance was unconstitutionally deficient, defendant has not demonstrated a reasonable probability that, absent counsel's error, there would have been a reasonable doubt respecting guilt.  Because defendant has not satisfied his burden with respect to the second prong of the *Strickland* analysis, the Court sees no need to investigate defendant's allegations with respect to the first prong and his counsel's performance at trial.

Accordingly,

**IT IS ORDERED** that the motion of defendant, Kenneth Vicknair, to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and, specifically, with respect to the remaining issue of whether defendant received ineffective assistance of counsel in relation to his failure to testify at trial,[21] is **DENIED**.

New Orleans, Louisiana, August __2nd__, 2007.

```
                                         LANCE M. AFRICK
                                    UNITED STATES DISTRICT JUDGE
```

---

[21] Rec. Doc. No. 298.